And we can take a few minutes to get all situated. I'm Len Bazelak with the law firm of Friend, Freese & Arnold here on behalf of the City of Dayton. Your Honor, I'd like to reserve three minutes of my time. That's fine. Thank you. May it please the Court and Counsel, thank you again, Your Honors, for allowing oral argument in this case. We do think it's an important matter involving the operations of the Dayton International Airport with respect to the rental car companies at the airport. And we appreciate the opportunity to argue in front of you this morning. If you read the briefs, Your Honors, I think there's a danger in getting bogged down in a lot of the arguments of the racks with regard to these contracts. We view it as a very simple contract case involving clear and unambiguous language, particularly with respect to the ready return agreement that was executed in March of 2009. We believe that the trial court erred in granting summary judgment in favor of the rental car companies and also erred in overruling the City of Dayton's motion for summary judgment because, again, we view this as a clear contract matter and based upon the clear language in the contract, the City was entitled to summary judgment in its favor. We start in this case, Your Honors, with the governing agreements between the City and the rental car companies and that were the concession agreements. Those were executed in December of 2006 and those are the agreements that govern the operations of the rental car companies at the City of Dayton airport. Without concession rights, without a concession agreement between the City and the rental car companies, there is no ability to operate at the Dayton International Airport. Those govern the rights and there's no dispute in this case, Your Honor, that those agreements... It leads to a standoff, doesn't it? Between the two agreements. If the lease is properly in place and extended, in other words, there's no termination. Well, there's still no concession agreement even if the lease... I say, yeah. Even if the lease is in place as the court indicated... There's where I call it a standoff. I mean, there's a lease and no means by which to use it. To operate. Right. But they're still holding some cards. That's the standoff I'm talking about. They have the benefit. They have this lease. If you don't give them the concession, I'm not sure where that goes, but they can negotiate with you about that. Right. But that's why we're here in terms of whether they have a lease for 20 years. I know. And we have to kind of look ahead and think, what if they do? What if they do? Correct. And what if this court thinks they might? So that's what I'm talking about, practically speaking, where that leaves the parties. I think that's an excellent question, Your Honor, in terms of, as a practical matter, how this moves forward. If the court were to even uphold the trial court's decision, because there is no concession agreement governing the operations of the racks at the airport, but they have this lease that the trial court granted them. Assuming, for purposes of argument, that they have the right to that space, the city is not going to be happy with that, having the space unavailable to the city, unavailable. So the city may want to do something about that. That's all I'm wondering, in the end, if that were to be the way this case comes out. We're at a standstill right now. Right. Standoff is kind of what I said. Okay. For the city to move forward. Correct. Right. Correct. With regard to the concession agreements, however, Your Honors, there is no dispute that those expired as of December 31, 2012. There's no dispute in this case. But for the court's decision, those were gone, those rights as of December 31, 2012. Any right to be a concessionaire, to operate at the airport, ended on December 31, 2012. So then we come to the Ready Return Agreement, which was the document executed in March of 2009, and there's a term provision in the Ready Return Agreement. And the term provision says, and I think it's important to still go back and look at the language here in the contract, in the term provision under Article V. It says, The agreement shall expire 20 years from the garage completion date. And, Your Honors, just to put in context, this is an agreement in connection with the construction of the parking garage at the Dayton National Airport and the use of the first floor of that garage for ready return activities for the rental car companies. So there was a 20-year provision put in the term. However, it says unless. It's 20 years unless. So we have a conditional 20-year provision in terms of the term. So unless it's earlier terminated, as set forth in Article XI or XII, and these are the events of default that would allow for an operator or the city to take some affirmative act to terminate under those provisions, under those articles. And that would be a termination of the agreement. Then it goes on. The term goes on. And it says, well, in addition, in addition to the events of default. But we agree the events of default are the subset of the term, the use of the term, termination. If there is a provision. I'm just trying to follow your logic. So proceed. Yeah, if there's a provision in those articles allowed for the operator or for the city to terminate, then the ready return terminates on its plain language under the term provision. But then there was another sentence added. And it said, in addition, in addition, this agreement shall automatically terminate upon the date of termination of the concession agreement. So the ready return that provides this 20-year rent-free space to operate on the first floor of the garage automatically terminates upon the date of the termination of the concession agreement. Pretty simple. So you look at the date of the termination of the concession agreement. What is the date of the termination of the concession agreement? It's everybody admits and acknowledges. If you look at the concession agreement, the date of termination, the only date, the only date that's listed in there in terms of when it ends is December 31, 2012. So under the clear language and the term Article 5 term provision of the ready return agreement, the ready return expired. Why do you have a 20-year lease? Well, it's 20 years, but it's conditioned on the plain language on whether or not it's either terminated by the parties or whether it automatically expires. No, but that's the lease. But if it's also terminating when your concession agreement terminates and you have a date on that, which is what you're saying, then what's the point? Well, the 20 years going back, and if you look at the briefs, the 20 years dealt with, it was tied to the bond financing that was supposed to be done. In terms of revenue bonds, there are CFCs that are collected by the rental car companies remitted to the city, and there was a bond, revenue bonds that were supposed to be secured by the RACs to cover any type of shortfall that amounted from the collection of the CFCs. So the 20 years was tied to that. But regardless, we have to look at the plain language. If the plain language, Your Honor, is clear as to whether or not it terminates, then we're done. There's no reason to look at why there was a 20-year lease. The plain language is that it terminates once the concession agreements terminate. Which brings me to my second point, Your Honor. If the RACs, sophisticated businesses, billion-dollar companies, wanted to have a provision in any of these contracts which required the city to enter into subsequent agreements, concession agreements, or amendments to the concession agreement, they could have done so. They didn't. There's nothing in these agreements which requires the city to continue perpetual concession agreements or amendments to the original concession agreements at all. And that's really the crux of the case. If there's no obligation for the city to do that, if there's no requirement in the language, and again, we're going back to just the language of the contracts. And if it's clear, there's no need to go beyond that. Well, and what is your response to the argument that in both contracts, termination and expiration are treated differently? Well, several points on that, Your Honor. First of all, and this is where the court erred. That's the basis of the court's decision. If you look at the court's decision, he went down the path of saying, well, termination and expiration are not synonymous, and therefore he granted summary judgment in their favor. First of all, if you look at the case law, we cited cases in our brief. There's a Daniel Boone case out of Kentucky, obviously, I think, which said that expiration is a subset of termination. It's one of the ways that a contract can be terminated. And so that's one point in terms of where the court got it wrong. Secondly, this was something that was not even raised. Is that your strongest argument, the Daniel Boone, and is that the strongest argument for not drawing a distinction between those two terms in this set of contracts? Well, I think the strongest argument is it doesn't matter, because regardless of whether it's terminated or it expires. Now you're going back to the practical. It ends. No, it ends. Oh. What I'm saying, Your Honor, is that it ends. It expires. Do we agree that there might be a distinction there, that something expires at the end of its term and the termination is something quite different? In a general sense in terms of whether parties have to take an affirmative act in order to terminate a contract or whether something expires, I agree there's a difference there. But here the strongest argument is it doesn't really matter. The racks even agree that once the concession writes, that was what was going on here. They wanted to make sure if the concession writes. Then the lease is of little value, but that doesn't mean that the lease disappears, the lease write. Well, it ought to. I mean, I'm just trying to follow what you're saying. It automatically terminates upon the date of termination, and the court for some reason went down the path of determining that. For some reason it probably was suggested by your opponent, by Avis. Not in the complaint. Okay. There's another argument. Not in the complaint. That's another argument. You would think, Your Honor, if that was the intent here, and there's a representative from Enterprise, one of the racks, Barb Mathey, who was involved in the negotiations, who we deposed in the case. You would think that once we put them on notice that we're automatically terminating or that we're allowing the ready return to the concession agreements to expire and the ready return, therefore, expires, that the first thing they would have said is, well, that termination provision that was negotiated at arm's length, that didn't mean that this expires. But it wasn't even in their complaint. It first came up in the deposition throughout the litigation of the case with our director, Mr. Terry Slaball. What's the import of that? What do you take from that? Is that a? That it doesn't, that's not the intent of the parties. That's not before the court. Is that what you're? Well, it was argued to the court below in summary judgment proceedings, and certainly that's why the court did adopt that argument and relied upon it as its rationale for its decision. And you have argued that it shouldn't have because it wasn't in the complaint? I think that's part of it. Where did you argue that? You argued that to the district court in the summary judgment? I think we argued that the intent was not to always allow for the expiration of the concession agreement and then the. . . Okay. Is that the answer, that you argued the intent was different? Yes. You've made that argument? We've made that argument. Okay. But not that they failed to properly frame the. . . So we should forget that. I don't think there's a legal import to that, but I think my point in making it is that it goes to the whole intent of why there was this language in there with regard to termination of the concession agreement. What it meant was that with concession rights, as to everybody, whether. . . I asked you a question, and I'm sorry because your light is off. Your red light's on. But I think Judge White has a question. Yes, Judge White. Are you saying that they haven't claimed that you have an obligation to continue a concession agreement with them? They have made a claim that we. . . have to continue. They acknowledge, I believe, they acknowledge that the concession agreements expired. And if you look at their briefs, and I would refer you to page 21 of Enterprise's brief and page 24, and I won't go into it because my time is out, 24 of Avis' brief, with regard to how this operates with respect to RACs that would not successfully bid. If there would have been an RFP process that would have gone forward in 2012, and if a RAC did not make a successful bid and therefore was not going to be operating on the airport, well, the ready return just expires as to that RAC. I think we. . . I just have one other question. Sure. So what do you say can happen now? Do you just go out and recontract with them? Wouldn't any rental car company be entitled to the benefit of that 20-year lease? Or has the lease itself ceased to exist because that initial contract expired? I think the trial court's decision granted them 20 years of rent-free space. I'm asking you. Raj. What happens? Well, the city has to decide to enter into some arrangement. I'm not asking what the judge ordered. I'm asking, according to you, what should happen now? You should be able to renegotiate the concession deal? What do you say should happen? That the decision of the court should be overruled so that we can enter into a concession agreement because the ready return has expired and that we move forward and enter into. . . Well, we proposed a permit process, and that's what we wanted to go forward with before the complaint was filed for an injunction, a permit process that would allow operations to continue on with the rental car companies. Where they pay rent? Well, under the court's decision, we couldn't charge them rent. But, yes, they would pay rent. They would pay rent. Under our proposed permit process, yes, Your Honor, they would have paid whatever they were required to pay under the permit process for the spaces, and that was rent. Okay. Well, thank you, Counsel. You have your rebuttal time. Appreciate it. Thank you. Good morning, Your Honors. I'm Caroline Gentry, and I represent the Enterprise plaintiffs, which are the plaintiffs in case number 12-405. I am going to take 10 minutes and then give 5 minutes to my co-counsel, Mr. Yeager, to argue. Do you have the same legal position? Yes. Do you not? Yes. And it may turn out differently than the 10 and the 5. That's just what we thought we would do when we came in. Your Honors, I want to begin with the issues that you have raised in your questions, which is what happens if there's a 20-year lease and then the concession agreements are no longer there, what happens? But I want to step back and talk first about how the agreements were meant to operate together and how this is exactly what was anticipated to happen. And that all would be in the record, all this, how it was anticipated? I believe so. Were you concerned with what was anticipated rather than the language of the contracts? No, Your Honor. I think it's relevant only in the sense that Judge Rice included the facts in his decision, just to give context so it shows that the interpretation is reasonable. But no, on the strict question of how the contract is interpreted, you don't have to go outside the four corners. But it was always anticipated that there would be a long lease of 20 years and then short concession agreements. And at the time the lease was entered, the concession agreement was only going to be for another 18 months. But the concession agreements typically are six years in this industry. The reason why that is is because the RACs need more flexibility. Everybody knew that there were going to be rent-a-car agencies at the airport for 20 years. It was never suggested that there weren't going to be rent-a-car agencies. But nobody knew which rent-a-car agencies would be there. Some who are there now might go out of business or struggle financially. Or new RACs might enter the marketplace. So the reason for having a shorter term for the concession agreement is because that way there's flexibility for the RACs. And the city also benefits because there's increased competition. So the last question, I believe, was whether the RACs have argued that they are entitled to new concession agreements. And the answer there is a little nuanced. The answer is that no, an individual RAC is not necessarily entitled to another concession agreement. But some RACs are entitled to new concession agreements. Who those RACs will be will be determined by the RFP process that the city should go through. And it says in its brief that it will go through an RFP process if the district court's decision stands. That's absolutely what was intended to happen. It's harmonious. It's reasonable in light of how the agreements. So what does the contract provision mean? Which one, Your Honor? The one that says that the lease ends when the concession agreement terminates. You're talking about this agreement shall automatically terminate upon the date of termination of the concession agreement. It means what the district court found, which is that if the concession agreement terminates early, before its expiration date, for one of the reasons laid out in the termination provisions of the concession agreement. These are the default provisions. Correct. Then the ready return agreement will also automatically terminate at the same time. And the reason that was included was because if a RAC no longer has concession rights, if the concession rights are terminated, for instance, if it stops operating or if it doesn't have insurance or for whatever reason, then it also should not have either rights or obligations under the ready return agreement. It shouldn't have the right to use the garage. It also shouldn't be obligated to pay for debt service or anything else. But is that lease between each individual RAC? Yes, yes. And that is where that leads to another issue, Your Honor. That's why none of the ready return agreements say that that individual RAC is going to have future concession rights. Because as I said, no one knows who's going to have the future concession rights. So an individual ready return agreement between the city and one RAC, say Enterprise, is not going to say, yes, you get a 20-year concession deal. That was not the intent. The intent was to have individual leases with individual RACs. But as you mentioned, the benefit of the lease goes to all of the RACs who are there for the next 20 years. Whoever's there gets the benefit. Now, doesn't your argument suggest that perhaps there is some ambiguity and that there's a need for parole evidence here, especially in terms of the motives of the city in terms of wanting a more profitable deal, that this 20-year deal was not profitable. I think you say in your brief and that, therefore, this is why, you know, they want to redo the deal. But you've talked a lot about intent and what the parties wanted to do and why they did it. It just strikes me that a number of the things you've made reference to are not within the four corners of the agreements here. Yes, and I understand your question, Judge Cole. I would say that no, the court does not need to look at parole evidence when it's interpreting what's at issue here, which is the sentence that you asked me about. The court doesn't need to go beyond the four corners. And even if the case law says that the court would only go beyond the four corners if both sides came up with a reasonable interpretation. There's only an ambiguity if both sides have come up with a reasonable interpretation, and we submit that the city has not. The only reason that I'm talking about intent here today, Your Honors, and how the arguments work is because the court started with very practical questions. How is this going to work? What happens if you have a lease and you don't have concession agreements? And I think it is necessary to answer that question to look at some of the facts, the intent, how the agreements operate together. But on the narrow issues before this court of whether the district court's decision and interpretation of the contract was correct, you do not need to look at parole evidence. So you don't think the contract is at least ambiguous at all? Correct, I do not. I do not. I agree with the district court's construction of it, and I think he was right on both counts. Essentially he reasoned that there were two reasons why the contract should be interpreted the way that we believed. One reason is because when you look at the termination provisions of the concession agreement, that's what tells you the date of termination of the concession agreement as it's discussed in the ready return agreement. And we've been through that. The city argued in its papers that- Let's say somebody had a concession agreement that expired. Yes. It wasn't terminated. It expired at the end of the term and it wasn't renewed. Yes. Does that person have a right under the lease? No. That person's rights could be terminated by the city and would be, frankly, by affirmative action by the city under the termination provisions of the concession agreement, which say that if the party ceases to operate or vacates the premises or abandons its operations, then it loses its rights. I believe that provision is in both the concession agreement and the ready return. So the city has raised the specter that somebody might have their concession agreement expire and they still somehow have rights under the ready return agreement. That's absolutely not the case. The ready return agreement-I misspoke earlier. The ready return agreement says that if that person no longer is operating on the airport, they lose their rights under the ready return. It's just it's not the automatic termination that's contemplated, but it's still termination. Let's see. Your Honors. And there was-was there any testimony to the contrary or affidavits? On the meaning of-no. No, there was not. In fact, if the court were to look at parole evidence, it all goes in favor of the RAC's interpretation that this was meant to be a 20-year lease. There was no early out for the city. There was no evidence that would say otherwise. But as was mentioned, the court did not go beyond the four corners of the contract, and we agree that that was proper. So you both moved-you had cross motions for summary judgment on the contract. Nobody argued there was an ambiguity. Correct. Both parties agreed. I will say this. The city raised a new argument on appeal regarding novation, and I believe they said in their brief that, well, there are no disputed issues of fact, so we can simply say there's a novation. On that issue, which is totally new, there are absolutely issues of fact that would have to be decided, weren't decided by the district court because it was never raised, but the issues of intent, knowledge, common understanding, consideration, those are factual issues. So if that-the court hasn't asked any questions about novation, but if that were being considered, I just want to be sure the court understands that we dispute that factually. And the novation argument was not raised before the district court. Correct. And it was not in the answer. We believe it's been waived for a number of reasons. Okay. All right. Thank you, Your Honors. May it please the court. Counsel. I will try not to rehash any grounds since we are in alignment as to the basic positions of this. I have a couple of additional points that I'd like to address. One is, just to be clear, Judge Cook, the district court did actually deal with the what happens next issue. It's not in the summary judgment decision, but in a subsequent order which dealt with bad faith. The plaintiffs had asked for relief, including compelling the city to negotiate in good faith. And what the district court concluded in a footnote in its August 22nd decision was that Ohio law already imposes an obligation on them to negotiate with the rest. It's also in the memo of understanding, memorandum of understanding here, isn't it? I mean, it's explicit there. It is. And the memorandum of understanding is at least referenced in the preamble to the ready return agreement. And although I understand that it's incorporated, it doesn't state it's incorporated for all purposes, there's nothing in the ready return agreement that's inconsistent with the intent of the party as set forth in the MOU as to the intent to negotiate successor concession agreements. So I do think that the judge contemplated that there will be a next step. There is a legal obligation on the city to deal with the recs in good faith. And that's where that stands at the end of the day. I won't belabor the point about novation except to say that it was argued in this court that the plain language of these agreements read together was that the third amendment to the concession agreement extinguished the ready return agreement. And in their briefs below, the city argued that the ready return agreement was a fully integrated document and controlled everything. The city has, from the time Terence Slabaugh, the new director, came on board, been looking for a way out of these deals, and it's shifting arguments, contradicts the notion that the arguments are based on plain language. It's a result looking for a rationale. You don't have to look at parole evidence. I agree with that. We did present it in our brief, and we presented it in the court below, but you'd only reach that if you had two reasonable interpretations. The city's interpretation isn't reasonable for the reasons I think Judge Rice did a great job analyzing the language of that provision. There is a piece of parole evidence that is both parole evidence and is kind of not, and that is there were two drafts that we put in the record where the words termination or expiration was in that second sentence of Article V. And Len mentioned, well, that sentence was added to make this clear, that December 31, 2012 was going to be the end. First of all, that would negate the first sentence of Article V, which is what Judge Rice was pointing out. Second of all, the city could have included the words or expiration in there. Now, that's not parole evidence that it could have done that. The fact is that was in an earlier draft. That's parole evidence. But you only get to even that if you find two reasonable interpretations. But were the court to consider in the alternative the city's interpretation as reasonable, I think that all of the parole evidence has been put in on one side. So you're saying that the draft preceding this, in that clause that we've been talking about, said termination or expiration. It did. And it was deleted by the rental car companies. Actually, the actual deletion of it was done by Elizabeth Baker, who's an employee of the city. I mean, she was handling the actual physical revisions to the document. We dealt with this in our brief, both below and in this court. In the record, the draft that included the language or expiration of the concession agreement is in the record at 40-3, and the draft where that was removed is in the record at 41. So, again, you can look at the drafts, but that's just also common sense. You could have put termination or expiration. And, in fact, in other parts of that document and other parts of the concession agreement, both terms are used when appropriate. So both from a parole evidence standpoint and from a construction standpoint, I think that is a relevant point. I would also point out, and it's in our briefs and I won't belabor it unless you'd like me to, there's at least three circuit courts, the Perfection Oil case, the Lockheed case, and the Hamden case, that applying state law throughout, none of these are Ohio cases, nor has defendants cited any. But there's cases that have recognized that termination and expiration are distinct terms. And certainly in the context of this case, Judge Rice did a good job of analyzing the actual usage of these words in the contract. If the panel were to find, just hypothetically, that there was ambiguity here, should we or could we consider the parole evidence in the record now, or is it your view that maybe we should remand for purpose the district court considering all the parole evidence? Because I'm assuming just some of it's in the record now. Your standard of review is de novo. We raised the argument that if you did not find, if you found that there were an ambiguity, then you look at the parole evidence and it's all one-sided. If Takhar Ahmad was the lead negotiator for the city, he was presented in deposition, and this is in the record, with what was being argued by the city, and he rejected that as being the intent of the parties. No contrary contemporaneous testimony. This was an interpretation that was post hoc, created by the city, when Terrence Slabo, a new director, came on board, wanted to get a better deal than the previous director got. And so this argument that was created was after these deals had all been cut, all these agreements had been signed. You've got if Takhar Ahmad testifying to that. You certainly have the RACs testifying to that. You have the drafts of the agreements. So your view is we have all of the parole evidence in the record now that we would need to decide the case? Yes, you have it, and it was presented to the district court. Okay. Apparently no further questions. Thank you. No further questions. Thank you. Your Honor, I would, Judge White, first like to respond to your question of Ms. Gentry, which dealt with the expiration of the concession agreement as to a particular RAC. We've never said that the ready return rights would continue in that case. They would not as to that RAC, and they don't as to these RACs. That's the point. The point is if it expires, the concession agreement expires, the rights go away and the ready return goes away, and the lease for 20 years goes away. So they've acknowledged it. And what they've said, which is completely different than what the Avis has argued and what Judge Rice said, is that under that case then we'd still have to terminate because that particular RAC is no longer operating. They've discontinued operations, and therefore the city would be allowed to terminate that particular RAC under the termination provisions. That doesn't make any sense. It expires, and the ready returns are gone, just like they would be as to them. And their rights under the ready return are gone. What they've attempted to do here is rewrite the agreements. That's what they've done. They've tried to rewrite the agreements, and Judge Rice has rewritten the agreements. And everything you heard clearly went beyond the four corners of these documents. And you're saying that the intent of both of these documents was that you'd be permitted to renegotiate the lease when the operating agreement was over? Renegotiate the concession agreements, and the lease has gone away, but the concession agreements would provide the ability to operate, and there'd be rental charges associated with that, concession fees, and all that would be contained in a concession agreement. But in here, what was proposed, and it's in our briefs, was a different process because the notice was put forward that the concession agreements were going to expire, the ready return goes away, and a permit process was going to be put in place to deal with the concession operations. As for your innovation argument, I assume that you were about to address that. I was about to address that. The Third Amendment. Here's what we believe the Court can do, and that is look at the Third Amendment because the Court can look at all the contracts together as part of the four corners. And the Third Amendment was part of the record. The First, Second, and Third Amendments of the concession agreements were part of the record, and the Court can look at that, and under the Third Amendment, it says the city agrees that the premises, the first floor of the parking garage, as depicted on Exhibit C, shall be provided to the operator at no additional cost for the term of the agreement, which ended on December 31, 2012. So why the Court didn't look at that as part of its interpretation of the four corners to interpret that term provision? Did you make the argument? As far as the innovation, that's a different argument. We did not raise it as an affirmative defense, and we didn't raise it with the Court below in terms of a novation, that particular provision being the last in time and extinguishing the ready return agreement. We did not make that argument, but we did make our argument in the brief that we think the Court can and should consider that as a separate argument, but we did not make it in the Court below, Your Honor. Okay. Your time has expired. We do appreciate your argument and the argument of all parties today, and your briefing as well. The case will be submitted, and you may adjourn court.